UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                       CASE NO. 6:24-cr-00091-WWB-UAM

FRANKLIN L. CARTER JR.,

       Defendant.

_____/

## DEFENDANT'S SENTENCING MEMORANDUM

The Defendant, FRANKLIN L. CARTER JR. (hereinafter sometimes referred to as "Mr. Carter"), by and through undersigned counsel, respectfully submits this Sentencing Memorandum for the Court's consideration in advance of the Sentencing Hearing scheduled for August 27, 2025. Mr. Carter respectfully requests a downward variance and imposition of a 48-month term of imprisonment, followed by supervised release with conditions including mental health and substance abuse treatment. Such a sentence is sufficient, but not greater than necessary, to fulfill the goals of sentencing under 18 U.S.C § 3553(a).

## I. PROCEDURAL BACKGROUND

Mr. Carter pleaded guilty on May 30, 2025, to three counts of the Superseding

Indictment thereby saving the Court and the Government significant time and resources:

1.    **Count One:** Conspiracy to Defraud the United States (18 U.S.C. § 371)

2.    **Counts Eight and Nine:** Failure to File an Income Tax Return (26 U.S.C. § 7203)

There is no plea agreement.  The Court accepted Mr. Carter's guilty plea on July 11, 2025, and Mr. Carter has remained substantially compliant with all pretrial conditions, with one isolated relapse into cocaine use in May 2025, after which the Court immediately ordered treatment options and Mr. Carter has maintained sobriety since.

## II. SENTENCING GUIDELINE CALCULATION

The Pre-Sentence Investigation Report ("PSR") establishes a Total Offense Level of 30, with a Criminal History Category of II, resulting in a theoretical guideline range of 108-135 months.  However, the statutory maximums limit the potential sentence to 84 months (five years for Count One and one year each for Count Eight and Nine, running concurrently).  Mr. Carter submits that application of the § 3553(a) factors warrant a significant downward variance from the 84-month cap.

2

## III. FLORIDA STATUTE § 3553(a) FACTORS SUPPORT A VARIANCE BELOW THE GUIDELINE RANGE

### A.    Nature and Circumstances of the Offense and the Defendant's Role

While Mr. Carter accepts responsibility for his role in the conspiracy, the PSR's characterization of his conduct requires important context and clarification.

### 1.    Leadership Role was Limited and Age-Dependent

The PSR applies a four-level leadership enhancement under U.S.S.G. § 3B1.1(a) based on Mr. Carter's co-ownership of Neighborhood Advance Tax ("NAT"). However, this enhancement fails to account for critical mitigating factors. Mr. Carter was only 24 years old when NAT began operations in 2016, with no prior business or tax experience. The evidence demonstrates that more experienced partners, particularly Emmanuel Almonor and Jonathan Carrillo, drove the fraudulent scheme's methodology and expansion. While nominally an owner, Mr. Carter's role was more accurately that of a participant who benefitted from the scheme rather than its architect or primary organizer. He relied heavily on more experienced partners and managers for day-to-day operations. While he participated in trainings, the majority of fraudulent returns were prepared by others. Critically, Mr. Carter ceased fraudulent tax preparation activities and closed NAT, unlike several co-defendants who continued their criminal enterprise through new entities demonstrating far

3

greater criminal sophistication.

From the outset of the investigation, Mr. Carter demonstrated genuine cooperation with federal authorities. He voluntarily gathered and produced voluminous documentation, including materials that the Government used to build its case against him and his co-defendants. As evidenced in Composite Exhibit A, Mr. Carter provided comprehensive records to IRS Special Agent Jennifer Rey on December 9 and December 23, 2020, including 2019 Neighborhood Advance Tax Training Manual he had compiled using H&R Block materials.

Additionally, Mr. Carter invested in legitimate training efforts, paying for professional seminars at various Central Florida hotels in an attempt to provide proper education to NAT employees. While these efforts ultimately proved inadequate given the scope of the fraudulent activity, they demonstrate Mr. Carter's intent to operate legitimately and his recognition of the need for proper procedures.

## 2. Financial Gain and Lifestyle

The PSR documents that Mr. Carter received approximately $1.9 million from NAT revenues and highlights his lease of a Lamborghini Aventador and spending habits. Unlike his co-defendants who reinvested proceeds into expanding criminal operations, Mr. Carter's expenditures reflect poor judgment and substance abuse issues rather than sophisticated money laundering or criminal enterprise building. Mr.

4

Carter eventually shut down NAT, refunded some clients, and redirected his efforts into a legitimate trucking business, FLC Express Trucking, LLC, a lawful enterprise that supports his family.

### 3. Restitution Responsibility

The PSR attributes a total restitution amount of $12,543,946 to Mr. Carter, joint and several with co-defendants.  Mr. Carter recognizes his obligation but respectfully notes that his financial condition (net worth of less than $6,000) makes full repayment unrealistic.  Imposing disproportionate financial liability compared to co-defendants risks unwarranted disparity.

### B. History and Characteristics of the Defendant

### 1. Upbringing and Adversity

Mr. Carter grew up in Central Florida in a single-parent household, raised primarily by his mother.  He endured significant financial hardship and periods of neglect, often left to fend for himself.  As a child, he experienced severe depression and suicidal ideation, resulting in a Baker Act hospitalization. Without a positive male role model or economic stability, Mr. Carter was vulnerable to poor decision-making in early adulthood. Despite these challenges, he demonstrated resilience, later becoming a devoted  father to his young son. Attached hereto as Composite Exhibit B are family photographs.  Additionally, attached hereto as

5

Composite Exhibit C are letters written by family and friends in support of Mr. Carter.

### 2. Mental Health and Substance Abuse

The PSR confirms a long history of depression and substance abuse, including daily alcohol use and weekly cocaine use. His relapse in May 2025 underscores the need for comprehensive treatment, not extended incarceration. His candor in admitting his struggles demonstrates recognition of his condition and willingness to engage in rehabilitation.

### 3. Limited and Non-Escalating Criminal History

Mr. Carter's criminal history of two points (Category II) stems from isolated incidents that do not demonstrate a pattern of escalating criminal behavior:

a.    2015 Battery: resolved with probation and successfully completed despite one violation.

b.    2019 Domestic Violence: While serious, this was an isolated incident which was resolved without incarceration. Significantly, these offenses are non-financial and do not suggest a propensity for sophisticated white-collar crime.

### 4. Entrepreneurial Efforts and Rehabilitation

After NAT's closure, Mr. Carter established FLC Express Trucking, LLC, a

6

legitimate business supporting himself and his child. This demonstrates his ability to redirect his skills into positive, lawful avenues.

### C. Need for the Sentence Imposed

A sentence of 84 months is greater than necessary to achieve deterrence, just punishment, and respect for the law. Courts have recognized the diminishing returns of lengthy incarceration in white-collar cases. See United States v. Adelson, 441. F. Supp. 2d 506, 514 (S.D.N.Y. 2006) (observing "the pointless severity" of excessive faud sentences); Gall v. United States, 552 U.S. 38 (2007) (emphasizing the individualized sentencing).

Mr. Carter is not a danger to the community, has demonstrated acceptance of responsibility, and has taken meaningful steps toward rehabilitation. A shorter custodial sentence, combined with supervised release, will provide appropriate punishment while allowing him to pursue mental health and substance abuse treatment, support his child, and continue lawful employment.

### D. Avoiding Unwarranted Sentencing Disparities

The PSR shows that Mr. Carter's co-defendants – who in many cases were more culpable – received significantly lesser sentences:

a. Emmanuel Almonor: 57 months – Despite bearing nearly identical loss amounts ($12.4M vs. $12.5M), Almonor received only 57 months while

7

facing the same statutory maximum. Both were "organizers," but Almonor expanded operations through STF while Mr. Carter ceased criminal activity.

b.    Adon Hemley: 46 months

c.    Abryle De La Cruz: probation with restitution

d.    Kaylah Dacosta: probation

e.    Isaiah Hayes: probation

Multiple co-defendants received manager or organizer enhancements yet received sentences ranging from probation to 57 months, demonstrating inconsistent application relative to actual culpability. Several co-defendants who continued fraudulent schemes after NAT's closure received more lenient sentences than the 84-month cap would impose on Mr. Carter, who stopped his criminal conduct.

Imposing 84 months on Mr. Carter would create disparity inconsistent with U.S.S.G. § 3553(a)(6). While the PSR finds Mr. Carter responsible for a higher loss amount, his conduct is distinguishable because he ceased fraudulent activity and transitioned to legitimate work. By contrast, others continued their schemes even after NAT collapsed.

## IV. <u>REQUEST FOR DOWNWARD VARIANCE</u>

Mr. Carter respectfully requests a sentence of 48 months imprisonment,

followed by a term of supervised release with conditions for substance abuse and mental health treatment. This sentence is justified by:

    a.    His acceptance of responsibility and cooperation with investigators.

    b.    His personal history of trauma, depression, and substance abuse.

    c.    His role as a father and provider.

    d.    His demonstrated ability to transition to lawful employment.

    e.    The need to avoid unwarranted disparities with co-defendants.

## V. ALTERNATIVE SENTENCING CONDITIONS

Should the Court decline the requested variance, Mr. Carter respectfully requests consideration of:

**Split Sentence**: Utilizing 18 U.S.C. § 3582(a) to impose a period of imprisonment followed by community confinement or home detention

**Residential Drug Treatment**: Participation in the Bureau of Prisons' Residential Drug Abuse Program for sentence reduction eligibility

**Early Supervised Release**: Consideration of early release to supervised custody for completion of treatment programs

## VI. CONCLUSION

Franklin Carter was a young man who made serious mistakes that he deeply regrets. His conduct was inexcusable, but it was also the product of youth,

inexperience, untreated mental health issues, and substance abuse. Unlike many of his co-defendants, he recognized his wrongdoing, ceased his criminal activity, and began building a legitimate life for himself and his son.

A sentence of 48 months imprisonment followed by supervised release with treatment conditions is sufficient, but not greater than necessary, to satisfy the goals of sentencing under 18 U.S.C. § 3553(a). It appropriately punishes his conduct while providing the structure and treatment necessary for his continued rehabilitation and successful reintegration into society as a law-abiding citizen and devoted father.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of August, 2025, I have electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: 1) Megan Testerman, Assistant United States Attorney, United States Attorney's Office, 400 W. Washington Street, Suite 3100, Orlando, FL 32801, megan.testerman@usdoj.gov, and

2)   Omayra   Hernandez,   Senior   United   States   Probation   Officer,

omayra_hernandez@flmp.uscourts.gov.

s/ Matthew P. Ferry
MATTHEW P. FERRY, of
LINDSEY, FERRY & PARKER, P.A.
341 N. Maitland Avenue, Suite 130
Maitland, FL 32751
*Mail:*  P.O. Box 505
Winter Park, FL 32790
Telephone:  (407) 644-4044
Facsimile:  (407) 599-2207
Attorneys for the Defendant.
matt@lindseyferryparker.com
Florida Bar No. 28950

11